UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEATTLE PACIFIC INDUSTRIES, INC.,

    Plaintiff,

    v.

S3 HOLDING LLC, *et al.*,

    Defendants.

Case No. C18-0224RSL

ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment" (Dkt. # 28) and "Defendants' Cross-Motion for Partial Summary Judgment (Dkt. # 37). Summary disposition of a claim is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 1

showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to the non-moving party, the Court finds as follows:

**A. LICENSE AGREEMENT AND ITS TERMINATION**

Plaintiff Seattle Pacific Industries, Inc. ("SPI") is the owner of the UNIONBAY and UB trademarks for apparel and footwear. In 2014, SPI licensed its marks to defendant S3 Holding LLC ("S3") in connection with the manufacture and sale of footwear pursuant to a Trademark License Agreement. Under the Agreement, S3 was obligated to make periodic guaranteed minimum royalty payments ("GMRP") and to pay the greater of 2% of net sales or 2% of the guaranteed minimum net sales for advertising and public

relations expenses. Defendant Olivia Miller, Inc., guaranteed prompt payment of every obligation and liability S3 incurred under the License Agreement. S3 was required to submit labels, designs, products, advertising materials, and anything bearing plaintiff's trademarks to SPI for approval. SPI had ten working days from submission to approve or disprove the item: if no decision was made within the time allowed, the submission was deemed approved.

It is undisputed that neither S3 nor Olivia Miller, Inc., made the $30,000 GMRP and $10,000 advertising payments that were due on January 1, 2017. SPI provided written notice of default to S3 in May 2017. To the extent the notice was based on the failure to make the required installment payments, the License Agreement terminated as of May 26, 2017, when S3 failed to cure the default.[1] SPI filed this lawsuit seeking recovery of amounts due under the contract and damages arising from post-termination sales of trademarked goods in violation of the Lanham Act.

**B. EQUITABLE ESTOPPEL**

S3 asserts that it was unable to reach the minimum net sales numbers anticipated under the Agreement because, at the end of 2016, SPI reversed its approvals of many of S3's designs for shoes that were to be sold in 2017. According to S3's President, "[a]t the time of SPI's reversals of its approvals, S3 Holding had already manufactured a substantial volume of shoes based upon the designs which SPI had approved and had sold many of these shoes to retailers for distribution. S3 Holding took these actions in direct reliance upon SPI's approvals of their shoe designs." Dkt. # 38 at ¶ 18. S3 asserts that SPI is equitably estopped from seeking relief under either the License Agreement or

---

[1] The notice was also based on S3's sale of products that had not been approved by SPI, a type of default for which no cure period was provided.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 3

trademark law because it previously stated that the 2017 designs were approved.[2] The first element of an equitable estoppel claim is "an admission, statement, or act inconsistent with a claim afterwards asserted." Robinson v. City of Seattle, 119 Wn.2d 34, 81 (1992). S3 does not explain how the 2016 approval of the designs for 2017 is in any way inconsistent with SPI's current claims of breach of contract based on non-payment and trademark infringement based on unlicensed use.[3] "Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." Id. S3 has not raised a genuine issue of fact regarding the estoppel defense or proven its elements by clear, cogent, and convincing evidence.

---

[2] S3's equitable estoppel argument regarding SPI's representation that it owns the UNIONBAY and UB marks has already been rejected. When defendants moved to compel discovery regarding SPI's use of the marks in connection with footwear since 1981, they argued that SPI's representations of ownership were false, that defendants relied on these false representations in entering License Agreement, and that defendants were prejudiced by their reliance. Dkt. # 35 at 11. The Court found that the defense as stated was actually based on fraud and had not been timely asserted in this litigation. To the extent defendants had raised an estoppel defense regarding statements of ownership, the Court found that plaintiff's breach of contract and trademark infringement claims were entirely consistent with its prior claims of use and ownership. Dkt. # 47 at 5. S3 has provided no facts or legal authority which would justify reconsideration of that finding, nor has it sought or justified a Rule 56(d) continuance to obtain additional facts.

[3] Defendants have not asserted an impossibility defense or facts which could support such a defense. The License Agreement placed design and product approval within the "sole and absolute discretion" of SPI: it was therefore foreseeable that some submissions would not be approved. The obligation to make GMRP and Advertising payments was based on guaranteed minimums, not actual sales: it was likewise foreseeable that S3's sales could fall short of the expected net sales and yet defendants would remain liable for the guaranteed minimum amounts specified in the Agreement. "It has long been recognized in Washington that when a party by his contract assumes an unqualified duty, he is bound to perform if possible, notwithstanding the occurrence of an unexpected, yet foreseeable event, against which he might have guarded in his contract. . . . Subjective inability to perform (*e.g.*, although it is possible this promise can be kept, I cannot) does not excuse performance." Thornton v. Interstate Sec. Co., 35 Wn. App. 19, 30-31 (1983) (internal citations and quotation marks omitted).

## C. INDEPENDENT DUTY DOCTRINE

S3 also argues that SPI's trademark claims are barred by the economic loss doctrine.

> Historically, Washington applied the economic loss rule to bar a plaintiff from recovering tort damages when the defendant's duty to the plaintiff was governed by contract and the plaintiff suffered only economic damages. Alejandre v. Bull, 159 Wn.2d 674, 683 (2007). The economic loss rule "attempted to describe the dividing line between the law of torts and the law of contracts." Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 385 (2010).
>
> In Eastwood, a majority of [the Washington Supreme Court] concluded that the term "economic loss rule" was a misnomer and renamed the rule the "independent duty doctrine" to more accurately describe how th[e] court determines whether one contracting party can seek tort remedies against another party to the contract. The independent duty doctrine continues to "'maintain the boundary between torts and contract'" in the place of the economic loss rule. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 165 (2012) (quoting Eastwood, 170 Wn.2d at 416 (Chambers, J., concurring)). The court has limited the application of the independent duty doctrine to a "narrow class of cases ... claims arising out of construction on real property and real property sales." Elcon, 174 Wn.2d at 165
>
> Under the independent duty doctrine, "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." Eastwood, 170 Wn.2d at 389.

Donatelli v. D.R. Strong Consulting Engineers, Inc., 179 Wn.2d 84, 91-92 (2013). In Eastwood and Elcon, the state Supreme Court "directed lower courts not to apply the doctrine to tort remedies 'unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.'" Elcon, 174 Wn. 2d at 165 (citing Eastwood, 170 Wn.2d at 417).

Defendants' economic loss/independent duty argument fails for a number of

reasons. First, this case does not arise in the real property or construction contexts, and there is no indication that the state Supreme Court has extended or would extend the doctrine to statutory remedies that protect intellectual property. Second, the rights, duties, and obligations imposed by the Lanham Act arise independently of the terms of the License Agreement. Third, the damages SPI seeks under the contract are distinct from those it seeks under the Lanham Act. Default and termination of the contract stripped S3 of its contractual right to use the marks, triggered certain obligations regarding inventory and other items, and accelerated the due date of the year's GMRP and Advertising payments (discussed below). SPI seeks to enforce those provisions through its breach of contract claim. Once the License Agreement was terminated, the relationship of the parties was again governed by the Lanham Act, and S3's unlicensed use of the trademarks caused non-contract injuries that are remediable pursuant to the terms of the Act. Finally, S3 has not identified, and the Court has not found, any case in which the existence of a license authorizing the use of intellectual property for a certain term and under certain conditions precluded a statutory claim of infringement under federal law for infringing activities occurring after the breach or termination of the licensing agreement. The Court declines to adopt such an expansive and unwarranted rule. Injuries arising from a violation of the Lanham Act following termination of the contract trace back to duties arising independently of the terms of the contract and are therefore remediable in this action.

**D. DAMAGES**

Upon termination of the License Agreement, S3 relinquished all right to use the UNIONBAY and UB trademarks except as provided in paragraph 11(d) of the Agreement. Under paragraph 11(d), S3 could continue to sell accumulated inventory for

180 days following termination if it provided a detailed schedule of the inventory and its location within fifteen days of termination and refrained from selling any defective or unapproved products. Any product remaining at the end of the 180 day sell-off period had to be turned over to SPI at no charge. Because the termination resulted from S3's default, the termination did not relieve S3 "from any obligations which accrued prior to the date of termination" and "the unpaid balance of the GMRP and Advertising Payment" were accelerated and became immediately due and payable. Dkt. # 26-2 at ¶ 11(c)(1) and (4).

It is undisputed that S3 owed, and Olivia Miller, Inc. guaranteed, payment of the GMRP and Advertising payments. The unpaid balance for 2017, in the amount of $160,000, was accelerated and became due and payable upon termination of the License Agreement on May 26, 2017. Those damages are liquidated and therefore subject to an award of prejudgment interest at 12% under RCW 19.52.010. See Hill v. Garda CL Nw., Inc., 191 Wn.2d 553, 573 (2018). As the prevailing party in an action to enforce rights under the License Agreement, SPI is also entitled to an award of reasonable attorney's fees and costs. Dkt. # 26-2 at ¶ 17(q). Olivia Miller, Inc., is jointly and severally liable for these amounts as guarantor.

S3 does not dispute that it failed to satisfy the conditions that would trigger the benefits of the 180 day sell-off period provided in paragraph 11(d) of the License Agreement. Thus, its sales of trademarked products after May 26, 2017, were not authorized by the contract. There is also no genuine dispute as to plaintiff's ownership of the mark or the fact that S3's continued use of the mark likely confused consumers regarding its relationship with SPI and/or the source of the products. The Court finds that S3 infringed SPI's trademarks under the Lanham Act. See Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 7

Under the Lanham Act, the owner of the mark "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In addition, the Court has the discretion to treble the actual damage award and, in exceptional cases, to award reasonable attorney's fees to the prevailing party. Id. SPI seeks an award of actual damages and measures its loss by multiplying S3's net sales of UNIONBAY and UB products after May 26, 2017, by the royalty rate set forth in the License Agreement (6%). S3 argues that SPI cannot utilize the contractual royalty rate in order to calculate actual damages under the Lanham Act because to do so would impermissibly blur the line between contract and tort, thereby proving that the duties are not "independent" and precluding recovery of the economic losses associated with infringement.

Under the Lanham Act:

> The district court assesses "any damages sustained by the plaintiff" in the same manner as in tort damages: the reasonably foreseeable harms caused by the wrong. See DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1222 (9th Cir. 2010) (citing Lindy Pen Co.[, Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993)]; see also Restatement (Third) of Unfair Competition § 36(1) (1995)). In reviewing a jury's award of actual damages for intentional infringement, we accept "crude" measures of damages based upon reasonable inferences so long as those inferences are neither "inexorable ... [nor] fanciful." See Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir.1993).

Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1112 (9th Cir. 2012). SPI has the burden of proving its damages, but may do so in any way that is reasonable in the circumstances presented and which does not require speculation. See DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1223 (9th Cir. 2010). Where the royalty rate for use of SPI's trademarks was recently established in an arms-length negotiation (whether between SPI

and S3 or between SPI and a third-party), there is nothing unreasonable about offering that rate as a tool for calculating actual damages incurred as a result of unauthorized use of the marks. S3 offers no evidence to suggest that the rate overstates the value of the marks or is otherwise an unreasonable factor when calculating the losses SPI incurred as a result of the unauthorized sales.

Using S3's sales records, SPI calculates that S3's net sales were $552,278 and requests a damage award on that amount of $31,136. Dkt. # 28 at 5.[4] An award of that amount is based on the evidence and reasonable in the circumstances. SPI also seeks an award of $15,012 in royalties on the inventory S3 held at the end of 2018, based on expected net sales of $250,212. There is no evidence that S3 is still selling the inventory, however, and SPI has not articulated any theory of damage arising from the mere existence of the inventory.

SPI further requests that the Court treble its Lanham Act damages. In order to recover enhanced damages, plaintiff must show that the additional sum "constitute[s] compensation and not a penalty." 15 U.S.C. § 1117(a). The only evidence of loss is the statement of SPI's President that S3's unauthorized use has (1) deprived SPI of the ability to exercise control over S3's use of the marks and (2) deceived consumers regarding the source of the post-termination products. Dkt. # 29 at ¶ 22. An unauthorized use that is likely to cause consumer confusion is the sine qua non of an infringement claim, however, for which actual damages are deemed an adequate remedy. In its reply memorandum, SPI suggests that S3's infringement was particularly damaging because the designs and styles it was selling post-termination had not been approved, were

---

[4] It appears that SPI may have short-changed itself in the calculations: $552,278 x .06 - $31,336.68. The Court declines to award more than SPI requested.

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 9

inconsistent with the quality consumers expect of the brand, and therefore adversely impacted the goodwill associated with the brand. There is no evidence in support of this conclusion, however. It is unclear why certain designs and styles were not approved by SPI in late 2016, there is no evidence that the products manufactured to the disapproved specifications were inconsistent with consumer expectations, and there is no evidence regarding the impact on SPI's goodwill. Even if the Court were inclined to believe that the sale of non-conforming goods would damage the company's goodwill, there is no indication of the proportion of disapproved versus approved product sold in 2018 making it impossible to calculate a compensatory award. The fact finder will not be permitted to speculate regarding all of these facts in an attempt to come up with a multiplier that compensated, without penalizing, S3.

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 28) is GRANTED in part and defendant's cross-motion for partial summary judgment (Dkt. # 37) is DENIED. SPI is entitled to judgment as a matter of law on its breach of contract claim, including damages arising from the breach in the amount of $160,000 plus pre-judgment interest at the rate of 12% per annum. SPI may, within fourteen days of the date of this Order, submit a fee petition noted for the third Friday after filing that seeks the reasonable fees and costs incurred in enforcing its rights under the License Agreement. Olivia Miller, Inc., is jointly and severally liable for all amounts awarded under the contract.

SPI is also entitled to judgment as a matter of law on its trademark infringement claim and has established actual damages in the amount of $31,136. SPI is not entitled to an award of actual damages associated with products that were not sold and therefore

ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT - 10

generated no net sales to which the royalty rate could attach, nor is it entitled to treble damages.

S3 shall, within seven days of the date of this Order, contact the judicial assistant, Teri Roberts, at 206-370-8810, and inform her whether its pending "Motion to Clarify" (Dkt. # 48) needs to be resolved by the Court.

Dated this 10th day of April, 2019.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge